**STONE CITY ATTRACTIONS, INC., et al., Appellants,**

v.

**John HENDERSON et al., Appellees.**

**No. 12769.**

Court of Civil Appeals of Texas, Austin.

Aug. 30, 1978.

Rehearing Denied Oct. 4, 1978.

Henry W. Christopher, Jr., Johnson & Christopher, San Antonio, for appellants.

Mark Z. Levbarg, Levbarg, Weeks & Chapman, Austin, for appellees.

O'QUINN, Justice.

This lawsuit entails accounting upon dissolution of a partnership, after two inactive partners brought suit against the managing partner for an accounting.

Jack Orbin, who is an appellant, and the plaintiffs below John Henderson and James Ramsey, formed a partnership called Stone City Attractions in February of 1973, with Orbin as managing partner, for the purpose of organizing and presenting for profit concerts of the "rock 'n' roll" and "country-and-western" type.[1] Before the end of 1973 Henderson and Ramsey were arrested and charged with conspiring to import marijuana,[2] after which they were convicted in federal court and sentenced to imprisonment for two years, with release in January of 1976.

When the partnership was formed in 1973, Ramsey and Henderson contributed $6,000 each, and Orbin contributed initially $400, followed by the additional sum of $3,900 some months later. The agreement was that Orbin would be the managing partner at a monthly salary of $500. The partners agreed that each of them would own an equal share in the venture and would share equally in profits.

While Henderson and Ramsey were in prison, Orbin incorporated Stone City Attractions, Inc., late in January of 1974, using funds from the partnership. Orbin claimed at trial of the accounting suit that he formed the corporation, with Orbin as sole shareholder, on advice of his attorney to create a holding entity for his interest in the partnership. Orbin did not inform Henderson or Ramsey of the incorporation, but from time of incorporation all business of the company was conducted utilizing the partnership bank account.

Orbin also claimed at trial that the partnership was an ongoing entity, with only his interest incorporated, but the record discloses that for the year 1974, the first year Henderson and Ramsey were away at prison, returns from income tax reported gross income of $13,400 for the partnership and gross income of $114,000 for the corpora-

tion. The partnership's income of $13,000 for 1974 covered receipts through March 31, 1974 only, the date Orbin intended the corporation would begin operation. The record shows that all expenses incurred by the corporation were charged to the partnership, and although Orbin represented he no longer used the funds of the other partners for the corporation, records of the bank account show balances as low as $500.

Orbin arranged to meet Henderson and Ramsey on July 6, 1975, about six months prior to their final release, at which time he informed them of his desire to dissolve the partnership. Ramsey and Henderson then learned of the existence of the corporation from financial statements presented at the meeting. The record discloses testimony that Orbin failed to inform Henderson and Ramsey that for accounting purposes their respective shares of the partnership were carried as "investor's interests" in the corporation owned exclusively by Orbin. In the month following this meeting Orbin supplied the other partners with an accounting of the partnership for the period ending June 30, 1975. This accounting showed Henderson was entitled to $3,988.32 and Ramsey entitled to $2,044.75.

Under testimony adduced at trial, the accounting Orbin supplied Henderson and Ramsey was based on designs and instructions from Orbin himself, rather than on financial statements and records of the legal entities. In the course of trial it developed that Orbin was unable to explain accounting procedures employed for the corporation; that Orbin had substantially understated the amount of gross income for the corporation; and that Orbin was not able to account for a significant percentage of the ticket receipts at some of the concerts.

1. Significant terms coined by American youths in creating a cult of popular music in the 1950's. Dohan: *Our Own Words*, pp. 288–89 (1974).

2. *Marijuana* : The wild tobacco *Nicotiana glauca*, dried leaves and flowers of which are smoked in cigarettes. Webster's New International Dictionary, 2d ed. (unabridged) 1954; or, by statute, "the plant *Cannabis sativa* L. . . and every compound, manufacture, salt, derivative, mixture, or preparation . . . or its seeds." Art. 4476–15, sec. 1.02(17), Texas Controlled Substances Act.

The lawsuit brought by Henderson and Ramsey against Orbin and the corporation, Stone City Attractions, Inc., was grounded in part on allegations that Orbin refused to render significant and informing accounts of benefits and profits of the partnership and that in so refusing Orbin violated Section 21 of Article 6132b, V.A.T.S., requiring such an accounting. Plaintiffs below also alleged that the "partnership was not wound up properly, if at all."

Trial of this suit began August 17, 1976, and after two days of testimony, the court entered an interlocutory order upon a finding that the accounting furnished by Orbin for the period beginning March 1, 1973, and ending June 30, 1975, was insufficient and that from the latter date to time of trial there had been no accounting by Orbin. By the interlocutory order the trial court adjourned the hearing pending preparation of an accounting under supervision of the court covering the period from March 31, 1973, through August 30, 1976.

The accounting was presented in final form November 30, 1976, and trial resumed in March of 1977, consisting thereafter principally of testimony by the accountants named pursuant to the interlocutory order. At conclusion of the trial the court entered judgment that Henderson and Ramsey recover jointly from Orbin and the corporation the sum of $62,000 and a balance of $2,335 remaining in the partnership bank account.

Orbin and the corporation have appealed and bring twenty-four points of error. Condensed to the controlling issues, the points present three attacks on the judgment: (1) error in the determination that the partnership was terminated November 30, 1976, and inclusion of the seventeen months prior thereto as a winding-down period; (2) error in allowing Henderson and Ramsey shares in any post-dissolution profits; and (3) that there was no evidence, or insufficient evidence, to support the holding that Orbin breached his fiduciary duties based on the findings of fact.

■ The trial court filed nineteen findings of fact and seven conclusions of law.

The fifteenth finding directly supports the contention of Henderson and Ramsey that Orbin as the managing partner failed to comply with requirements of Article 6132b, sec. 21, pleaded by plaintiffs below. The finding stated, "Upon demand by Henderson and Ramsey for an accounting, Orbin failed to account meaningfully [sic] for the receipts and expenditures of the business of the partnership and of the corporation." Since the cant term "meaningfully" as an intended adverb is not English, but sheer jargon, inexact and without meaning, we must construe the finding to be, when stated in intelligible English, that Orbin failed to account fully and faithfully for receipts and expenditures of the partnership and of the corporation. The record supports that finding.

In its conclusions of law the trial court fixed June 30, 1976, as the date of dissolution of the partnership and November 30, 1976, as the termination date of the partnership. The court concluded that Orbin as the managing partner owed the highest fiduciary duty to the other partners in the several particulars set out in the findings of fact. The Court adopted the accounting prepared pursuant to the court's order in arriving at a distribution of profits made during the seventeen months of the winding-down period and to determine the capital interests of the partners at the date of dissolution.

■ The trial court correctly concluded that because Orbin had assigned his partnership interest to the corporation, this transaction gave rise to the right in Henderson and Ramsey to bring about dissolution of the partnership under provisions of Article 6132b, Texas Uniform Partnership Act. Dissolution by statute is ". . . caused (1) Without violation of the agreement between the partners . . . (c) By the express will of all *partners who have not assigned their interests* or suffered them to be charged for their separate debts . . ." (Emphasis added) Section 31(1)(c), Art. 6132b, V.A.T.S.

■ Since Orbin did not disclose the assignment he had made of his partnership interest to the corporation at the time of assignment, Henderson and Ramsey were without notice of their right to exercise the option of dissolution. The trial court chose as the date of dissolution June 30, 1975, the date Orbin attempted to dissolve the partnership, which was six days prior to the date Henderson and Ramsey actually learned of the assignment and agreed to dissolve. It is obvious that the court chose June 30, 1975, for accounting purposes, and although appellees raise some informal objections, it is clear that the capital structure did not change during the intervening six days and no harm to any party resulted.

■ The rights of outgoing partners of a partnership, when the business continues after dissolution, are stated in Section 42 of Article 6132b. Under the statute if the business continues after dissolution, the partner or partners not continuing in the business may institute action for accounting and (1) claim the value of the interest held at dissolution and (2) receive in addition profits from the date of dissolution. But the outgoing partner's right to profits will end when the value of the partner's interest is properly paid. See Crane and Bromberg: *Law of Partnership*, Sec. 86(c), pp. 495–6; *Cauble v. Handler*, 503 S.W.2d 362, 366 (Tex.Civ.App., Fort Worth 1973, writ ref'd n. r. e.).

■ The trial court found, on the basis of testimony respecting Orbin's accounting at the time of dissolution, that Orbin had failed to account fully and faithfully for the receipts and expenditures of the business. Thus the many failings of Orbin's inadequate accounting make it clear that the value of interests held by Henderson and Ramsey were not properly determined and payable until the court ordered accounting was completed on November 30, 1976.

Under Section 21 of Article 6132b, "Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, *conduct, or liquidation* of the partnership or from any use by him of its property." (Emphasis added) The trial court correctly used November 30, 1976, as date of termination and properly distributed to each partner one-third of the profits earned in the interim from June 30 to November 30, 1976, as contemplated under the statutes. *Cauble v. Handler, supra*, 503 S.W.2d 366.

■ By cross point, appellees claim that each of them is entitled to one-third of the capital structure of the corporation as of November 30, 1976. This result is not within the plain intent of Section 42 of Article 6132b which fixes the value of the outgoing partner's interest as of dissolution. The accountants operating under the court's order found that on June 30, 1975, the date of dissolution, the partnership comprised the interests of the Stone City Attractions, Inc., and of the interests held individually by Henderson and by Ramsey. Henderson's interest was valued at $4,050.65 and the interest of Ramsey at $4,256.08. Henderson had received previously $3,988.32 and Ramsey had been paid $2,044.75. In addition, the trial court awarded the partnership bank account of $2,335.00 to Ramsey and Henderson. The record shows that appellants set aside $2,223.82 of this bank account and tendered it to Ramsey, bringing Ramsey's total to $4,268.57. The balance will bring Henderson's total to $4,099.50. It thus appears that both Ramsey and Henderson have received their share of the partnership as of June 30, 1975.

We have carefully examined the record in reviewing all the contentions of appellants and of appellees. All contentions not in accord with judgment of the trial court are overruled.

The judgment of the trial court is in all things affirmed.

Affirmed.