Paula A. BADER, Individually and as Independent Executrix of the Estate of Bertran T. Bader, Jr., Appellant,

v.

William D. COX, Jr.; William D. Cox, Jr., P.C.; Bertran Bader, III; Bertran T. Bader, III, P.C.; and Cox & Bader, Appellees.

No. 05–84–00597–CV.

Court of Appeals of Texas, Dallas.

Dec. 9, 1985.

Rehearing Denied Jan. 6, 1986.

678

**680**

Richard A. Sayles, Michael L. McCoy, Carrington, Coleman, Sloman & Blumenthal, Dallas, for appellant.

Bertran T. Bader III, William D. Cox, Jr., Cox & Bader, Dallas, for appellees.

Before SPARLING, WHITHAM and MALONEY, JJ.

SPARLING, Justice.

Appellant, Paula A. Bader ("Ms. Bader"), individually and as independent executrix of the estate of her husband, Bertran T. Bader ("decedent"), appeals a summary judgment denying her relief in her action against appellees, decedent's two former law partners, Bertran Bader, III, ("Bader") and William D. Cox, Jr. ("Cox"). Ms. Bader seeks to recover decedent's interest in the partnership and attorney's fees.

Ms. Bader's points of error on appeal present one central question: Are attorneys' pending contingent-fee files assets of their partnership? We hold that they are. Accordingly, the trial court erred in granting appellees' summary judgment motion which denied Ms. Bader's claim to income from the partnership's contingent-fee files. Further, since the valuation of these files is a fact issue, we reverse and remand this cause for trial.

*Facts*

On January 1, 1978, Cox and decedent formed a partnership for the practice of law, agreeing to share equally, on a percentage basis, profits, losses, and ownership of capital. Bader admitted that he subsequently joined the firm as a partner, holding a lesser percentage interest in the partnership.

Following decedent's death on April 7, 1982—which automatically dissolved the partnership—Cox and Bader continued to practice law, taking possession and control of the approximately 120 active cases of the former partnership. The majority of the cases were retained on a contingent-fee basis. Ms. Bader alleges that, in concluding some of the cases, Cox and Bader received more than $700,000 in attorney's fees and reimbursed expenses and that they have neither accounted to decedent's estate nor paid the estate decedent's percentage interest in the income.

*Summary Judgment*

Bader and Cox can prevail on motions for summary judgment if they establish, as a matter of law, that no genuine issue of material fact exists with respect to one or more essential elements of each of Ms. Bader's causes of action and that they are entitled to judgment as a matter of law. *Emmer v. Phillips Petroleum Co.*, 668 S.W.2d 487, 490 (Tex.App.—Amarillo 1984, no writ); *Federated Department Stores, Inc. v. Houston Lighting & Power Co.*, 646 S.W.2d 509, 511 (Tex.App.—Houston [1st Dist.] 1982, no writ). In reviewing the propriety of a summary judgment, we accept as true the nonmovant's version of the facts adduced through the summary judgment proof and infer every reasonable intendment in favor of the nonmovant. *Williams v. Bennett*, 610 S.W.2d 144, 145 (Tex.1980); *Sonenthal v. Wheatley*, 661 S.W.2d 169, 171 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.); *Goodwin v. Texas General Indemnity Co.*, 657 S.W.2d 156, 159 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.).

## Partnership Property

■■■ Ms. Bader argues that the trial court erred by granting summary judgment disposing of her claims to income from client files because, as a matter of law, contingent-fee files pending at the time of decedent's death are assets of the partnership, and the proper valuation of the files is a fact issue. We agree.

Ms. Bader alleges that the law firm operated as a partnership but did not present summary judgment proof of the terms of any partnership agreement. Consequently, the Texas Uniform Partnership Act, TEX. REV.CIV.STAT.ANN. art. 6132b (Vernon 1970), governs the rights and duties of the partners. *Park Cities Corp. v. Byrd*, 534 S.W.2d 668, 672 (Tex.1976); *Dobson v. Dobson*, 594 S.W.2d 177, 180 (Tex.Civ.App.— Houston [1st Dist.] 1980, writ ref'd n.r.e.).

■■■ Unless an agreement provides otherwise, the partnership dissolves upon the death of any partner.[1] Art. 6132b, §§ 29, 31(4); *Miller v. Howell*, 234 S.W.2d 925, 930 (Tex.Civ.App.—Fort Worth 1950, no writ). "On the death of a partner, such partner's surviving spouse (if any) and such partner's heirs, legatees or personal representative, shall to the extent of their respective interests in the partnership, be regarded for purposes of the Act as assignees and purchasers of such interests from such partner." Art. 6132b, § 28–B(1)(B). Section 42 defines the rights of the estate of a deceased partner when, as in the instant case, the business is continued:

> When any partner retires or dies, and the business is continued under any of the conditions set forth in Section 41 (1, 2, 3,

5, 6) or Section 38(2b), without any settlement of accounts as between him or his estate and the person or partnership continuing the business, unless otherwise agreed, he or his legal representative as against such persons or partnership may have the value of his interest at the date of dissolution ascertained, and shall receive as an ordinary creditor an amount equal to the *value of his interest in the dissolved partnership with interest*, or, at his option *or at the option of his legal representative, in lieu of interest, the profits attributable to the use of his right in the property of the dissolved partnership;* provided that the creditors of dissolved partnership as against the separate creditors, or the representative of the retired or deceased partner, shall have priority on any claim arising under this Section as provided by Section 41(8) of this Act. [Emphasis added.][2]

Attached to Cox's motion for summary judgment is the affidavit of a certified public accountant who describes the firm's accounting system as "cash basis" and contends that decedent was entitled only to his "capital account." He further states that "all profits had already been added to the capital accounts." Thus, "[e]arnings due to work performed in the future on client files could not be properly attributed to the predissolution cash-basis law firm." We disagree. Ms. Bader is entitled to the value of decedent's interest in the dissolved partnership, defined as profits and surplus. Art. 6132b, § 26. "Surplus" is the excess of assets over liabilities. *Fulgham v. Gulf, Colorado & Santa Fe Railway Co.*, 288 S.W.2d 811, 813 (Tex.Civ.App.—Austin

---

1. The three steps for ending a partnership are dissolution, winding up, and termination. "The dissolution of a partnership is the change in the relation of the parties caused by any partner ceasing to be associated in the carrying on ... of the business." Art. 6132b, § 29. "On dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed." Art. 6132b, § 30; *Ross v. Walsh*, 629 S.W.2d 823, 825 (Tex.App.—Houston [14th Dist.] 1982, no writ). Thus, the legal existence of a partnership continues after dissolution, but operation of the business normally continues only to the extent necessary for wind-

ing up. J. CRANE & A. BROMBERG, LAW OF PARTNERSHIP § 83A (1968).

2. The property rights of a partner are (1) his interest in the partnership, (2) his rights in specific partnership property, and (3) his right to participate in management. Art. 6132b, § 24. Ms. Bader, as decedent's wife, has a community property interest in decedent's interest in the partnership but has no interest in decedent's right to participate in management and has a right in partnership property only to the extent section 42 allows.

1956, writ ref'd n.r.e.); *Anderson v. United States*, 131 F.Supp. 501, 502 (S.D.Cal. 1954). Partnership property is an asset of a partnership. Art. 6132b, § 40(a)(I). We hold that pending contingent-fee cases are partnership property which may or may not have value, depending upon the evidence.

Thus, we cannot agree with Bader's and Cox's contention that because the partnership operated on a cash-basis accounting system and because the value of the contingent-fee files at the time of decedent's death is not readily or easily ascertainable, the files are not assets of the partnership. The fact that fees are not earned until a case is concluded by settlement or judgment does not compel the conclusion that the files lose their characterization as partnership assets for purposes of evaluating the interest of a deceased partner.

 First, the files are undergirded by binding contracts and, thus, constitute more than a mere unrealized future expectancy. Second, dissolution does not change the status of firm assets. *Zimmerman v. Harding*, 227 U.S. 489, 33 S.Ct. 387, 57 L.Ed. 608 (1913). As stated earlier, a partnership does not terminate upon dissolution but continues until the winding up is completed. Art. 6132b, § 30; *Shannon v. Monasco*, 632 S.W.2d 946, 946 (Tex.App.— Waco 1982, no writ); *Woodruff v. Bryant*, 558 S.W.2d 535, 539 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.). The surviving partners are required to wind up the partnership business with reasonable dispatch and distribute the residue of the assets among the surviving partners and heirs of the deceased partner in proportion to their respective interests. Art. 6132b, § 37; *Collins v. Naylor*, 192 S.W.2d 332, 334 (Tex.Civ.App.—Fort Worth 1946, no writ). The duty to wind up generally includes the duty to complete all of the firm's executory contracts. *See Rossetti v. City of New Britain*, 163 Conn. 283, 303 A.2d 714, 718 (1972); *Platt v. Henderson*, 227 Or. 212, 361 P.2d 73, 82 (1961). A contrac-

tual agreement for the performance of services in existence at the dissolution of a partnership is unfinished business of the dissolved partnership, and the partners owe a fiduciary duty to wind up that business, if possible, and to refrain from taking action for purely personal gain. *See Rosenfeld, Meyer & Susman v. Cohen*, 146 Cal. App.3d 200, 194 Cal.Rptr. 180, 191–92 (1983). Therefore, we conclude that the contingent-fee contracts were, as a matter of law, assets of the partnership.[3]

We are not unmindful, however, of the many factors—many outside the remaining partners' control—that may extend the length of a lawsuit into many years. These contingency fee cases need not be concluded as part of the winding-up process, but rather may be given a present value.

### Valuation

 The surviving partners owe a duty to account to the estate of a deceased partner, and the estate has a corresponding right to an accounting. Art. 6132b, §§ 22, 43; *Stone City Attractions, Inc. v. Henderson*, 571 S.W.2d 206, 210 (Tex.Civ.App. —Austin 1978, writ ref'd n.r.e.). Thus, as previously stated, if a business continues instead of being wound up on dissolution of the partnership, the deceased partner's representative may claim as a creditor the value of the decedent's interest at dissolution and either interest or profits attributable to the use of his right in the property of the dissolved partnership from the date of dissolution. As a creditor in this situation, the representative's claim is subordinate to the claims of outside creditors. Art. 6132b, § 42; *Cauble v. Handler*, 503 S.W.2d 362, 366 (Tex.Civ.App.—Fort Worth 1973, writ ref'd n.r.e.); *Taormina v. Culicchia*, 355 S.W.2d 569, 576 (Tex.Civ.App.—El Paso 1962, writ ref'd n.r.e.).

---

**3.** Decisions from other states are in accord with our holding. *See Balfour, Guthrie & Co. v. Hansen*, 227 Cal.App.2d 173, 38 Cal.Rptr. 525 (1964) (causes in action were partnership as-

sets); *In re Lester*, 61 A.D.2d 935, 403 N.Y.S.2d 33 (N.Y.App.Div.1978) (accounts receivable representing uncollected fees were partnership assets).

Ms. Bader prayed for, *inter alia*, a "38.285 percent of the fees paid to Bader & Cox from client files pending on April 7, 1982, along with 38.285 percent of the costs and expenses that Bader & Cox advanced on behalf of their clients and for which it has been reimbursed" and "the profits attributable to the use of Decedent's right in the property of the dissolved partnership." Cox argues that, by electing to receive decedent's interest in the partnership plus profits, Ms. Bader is seeking a double recovery. We disagree. Article 6132b, § 42 explicitly provides for recovery of the decedent's interest, plus any profits derived from that interest. As decedent's representative, Ms. Bader has no interest in any specific item of partnership property, but instead she is entitled to the value of the decedent's interest in the partnership. She is also entitled to "profits attributable to the use of his right in the property of the dissolved partnership" from the date of dissolution. The purpose of the provision is to prevent unjust enrichment of the remaining firm members. Note, *Profit Rights and Creditors' Priorities After a Partner's Death or Retirement: Section 42 of the Uniform Partnership Act*, 63 Yale L.Rev. 709, 716 (1954). Her right to profits derived from the decedent's interest ends when the value of decedent's interest is properly paid—*i.e.*, at termination. *Stone City Attractions*, 571 S.W.2d at 210.

### a. *Interest in the partnership*

Ms. Bader has the burden of proving the amount for which the surviving partners should account to decedent's estate. Thus, to recover the value of decedent's interest in the dissolved partnership, Ms. Bader has the burden of proving the market value of, and decedent's share of, the partnership assets. *Davis v. Johnson*, 689 S.W.2d 297 (Tex.App.—Houston [1st Dist.], 1985) (not yet reported); *Bailey v.*

*Jackson*, 573 S.W.2d 267, 269 (Tex.Civ.App. —Waco 1978, no writ); *Cauble*, 503 S.W.2d at 364–65; *Taormina*, 355 S.W.2d at 577.

The summary judgment evidence indicates that during the life of the partnership, profits derived from contingent-fee cases were distributed on a percentage basis,. regardless of which member of the firm worked on the case. Ms. Bader contends that the same method of distribution should obtain with respect to profits derived from all files pending at the time of decedent's death.[4] We agree, but note that if the surviving partners expend a significantly greater effort winding up the pending cases than they would have if decedent were still alive, the method of distribution may unjustly favor Ms. Bader. The Texas Uniform Partnership Act protects the surviving partners from such an unjust result. Section 5 provides that "[i]n any case not provided for in this Act the rules of law and equity ... shall govern." Section 18 provides that "a surviving partner is entitled to reasonable compensation for his services in winding up the partnership affairs."[5] *See Cofer v. Hearne*, 459 S.W.2d 877, 879–80 (Tex.Civ.App.—Austin 1970, writ ref'd n.r.e.); *Rosenfeld*, 194 Cal.Rptr. at 192; *Timmermann v. Timmermann*, 272 Or. 613, 538 P.2d 1254, 1262–1264 (1975) (en banc).

Collectively, these provisions provide for compensating the surviving partners for their services in concluding the cases and ensure that Ms. Bader receives, as section 42 prescribes, the value of decedent's interest at the time of dissolution. Thus, we hold that the estate is entitled to the value of decedent's percentage interest in the assets, less any outstanding liabilities, plus any profits attributable to the use of his right in the property after deducting the value, if any, of Cox's and Bader's services in winding up the business of the dissolved partnership. *See Estate of Barb-*

---

**4.** Since Ms. Bader has no right in any specific asset, she is, of course, seeking decedent's percentage interest in the total value of the assets.

**5.** Even if a new partnership is formed, and the practice of law is, thus, continued, the surviving partners owe a fiduciary obligation to wind up all old business of the former partnership and distribute to each partner or representative his or her pro rata share of partnership assets.

*era,* 55 Ill.2d 235, 302 N.E.2d 302, 304 (1973).

Ms. Bader charges that Cox and Bader wrongfully withheld partnership assets. Specifically, Ms. Bader contends that Cox and Bader have received in excess of $700,000 in attorney's fees and reimbursed expenses from contingent-fee cases pending at the time of decedent's death. She further alleges that Cox and Bader have neither accounted to decedent's estate for these amounts nor paid her a portion of the recovery. A partner of a dissolved partnership may not take action with respect to unfinished business which leads to purely personal gain. *See Rosenfeld,* 194 Cal.Rptr. at 190; *Platt v. Henderson,* 227 Or. 212, 361 P.2d 73, 83 (1961). Thus, if the surviving partners in fact acted wrongfully, they are not entitled to compensation for winding up the business. *See Anderson v. Droge,* 216 Iowa 159, 248 N.W. 344, 347 (1933). If, however, Cox and Bader in good faith relied on their claim that decedent's estate was paid all to which it was entitled, no fiduciary duty was breached, and they are entitled to compensation.

#### b. *Profits*

Because Cox and Bader may have used or will use property of the deceased, they are accountable to Ms. Bader for profits acquired therefrom during the interval between dissolution and termination. *See Urzi v. Urzi,* 140 Cal.App. 589, 295 P.2d 539, 541 (1956); *Sechrest v. Sechrest,* 248 Wis. 516, 22 N.W.2d 594, 596 (1976). *Seattle—First National Bank v. Marshall,* 31 Wash.App. 339, 641 P.2d 1194, 120 (1982). Moreover, *Hughes v. Aycock,* 598 S.W.2d 370 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.), does not, as Cox appears to contend, address the method of valuing decedent's *interest in the partnership* at the date of dissolution, but only the method of calculating the "profits attributable to the use of [decedent's] *right in the property* of the dissolved partnership." (emphasis added). To recover prof-

its, Ms. Bader must prove, by competent evidence, the profits gained after dissolution and prior to termination which are attributable to the use of decedent's right in the property of the dissolved partnership. As stated in *Hughes,* 598 S.W.2d at 377:

> This means that [Ms. Bader] must not only prove the profits earned by the partnership after dissolution [citations omitted] but must demonstrate what portion of those profits are directly atributable to [decedent's] capital investment. This requires more than simply multiplying the percentage figure representing his contribution to capital by the total profits for the period in question. Rather, the portion of the profits attributable to the [decedent's] ownership interest must be distinguished from the portion attributable to the skill, time, efforts, and diligence of the remaining partners. Section 42 does not entitle the outgoing partner or his estate to the profits attributable to the labor and management of the remaining partners. *Timmermann v. Timmermann,* 272 Or. 613, 538 P.2d 1254 (1975 (en banc).

Ms. Bader alleged, but neither party proved by competent summary judgment evidence, that decedent owned a 38.285 percent interest in the partnership. Because fact issues remain as to the value of decedent's percentage ownership of the partnership, the number and value of the files, the profits attributable to use of decedent's right in partnership property, and the impropriety, if any, of Cox's and Bader's conduct, summary judgment clearly was improper.

#### *Fiduciary Relationship*

In her pleadings, Ms. Bader seeks relief for breach of fiduciary duties. However, Cox alleges in his motion for summary judgment that the estate cannot recover for any alleged breach of fiduciary duties because no fiduciary duties were owed or breached.[6] Cox additionally contends that

---

**6.** Bader did not address in his motion for summary judgment Ms. Bader's cause of action for

breach of fiduciary duties. Accordingly, we re-

Ms. Bader did not rely on any wrongful acts or omissions of Cox, and no damages were incurred. Sections 20 and 21 of article 6132b impose on surviving partners fiduciary duties to the representative of a deceased partner. Cox had the burden of establishing by competent summary judgment evidence the nonexistence of any element of Ms. Bader's cause of action for breach of fiduciary duties and an affirmative duty of showing fairness in the transactions. *Texas Bank & Trust G. v. Moore,* 595 S.W.2d 502, 508–09 (Tex.1980). Relying on his argument that the pending contingent-fee contracts are not assets of the estate, Cox asserts that the surviving partners have paid or tendered the full monetary sum mandated by the Partnership Act. Our holding that the contracts were partnership assets is dispositive of this claim. It does not, however, dispose of Cox's contention that he did not breach any fiduciary duties because a fact issue remains as to whether Cox's assertion that the decedent's estate was paid in full and that any post-dissolution fees were not assets of the partnership was made in good faith. Cox did not introduce summary judgment evidence sufficient to establish his contentions as a matter of law. Accordingly, the trial judge erred in granting summary judgment dismissing Ms. Bader's cause of action for breach of fiduciary duties. We need not consider whether Bader and Cox had any fiduciary duties other than those imposed on surviving partners in general.

### Judicial Estoppel

Bader contends in his motion for summary judgment that because Ms. Bader asserted under oath in her original petitions, in her motion for appointment of receiver, and in the inventory filed in the probate court that Bader was an associate attorney, she was judicially estopped to claim, following Bader's admission of partner status, that Bader was a partner of the firm. We disagree.

The doctrine of judicial estoppel bars a party who successfully maintained a position in a prior judicial proceeding from afterward adopting an inconsistent position. *Long v. Knox,* 155 Tex. 581, 291 S.W.2d 292, 295 (1956); *LaChance v. McKown,* 649 S.W.2d 658, 660 (Tex.App.—Texarkana 1983, writ ref'd n.r.e.); *Moore v. Neff,* 629 S.W.2d 827, 829 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). Bader offered no summary judgment proof that Ms. Bader successfully maintained in a prior proceeding that Bader was not a partner. Furthermore, the statements were simply allegations and not deliberate, clear, and unequivocal. *See American Savings & Loan Association of Houston v. Musick,* 531 S.W.2d 581, 589 (1975); *Bethel v. Butler Drilling Co.,* 635 S.W.2d 834, 844 (Tex. App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). Additionally, Ms. Bader asserts several causes of action that are not dependent on Bader's status as a partner.

Although couched in terms of "judicial estoppel," Bader appears to be arguing that Ms. Bader's allegations that Bader was not a partner constitute judicial *admissions,* barring Ms. Bader from introducing contrary evidence. *See Mendoza v. Fidelity & Guaranty Insurance Underwriters, Inc.,* 606 S.W.2d 692, 694 (Tex. 1980); *Davis v. Quality Pest Control,* 641 S.W.2d 324, 329 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). We disagree. Ms. Bader amended her petition to allege partnership status. An amended petition supersedes a prior petition, and the allegations in the prior petitions cease to be judicial admissions. TEX.R.CIV.P. 65; *Drake Insurance Co. v. King,* 606 S.W.2d 812, 817 (Tex.1980); *Long v. Knox,* 155 Tex. 581, 291 S.W.2d 292, 294 (1956). Accordingly, we hold that the trial court erred by granting summary judgment on the basis of the doctrines of judicial estoppel or judicial admission.

### Special Exceptions

Because we are remanding this case for trial, we address Ms. Bader's contentions concerning the trial court's ruling on Bad-

verse the summary judgment granted Bader on

this cause of action.

er's special exceptions. On October 25, 1983, Ms. Bader filed a First Amended Petition, to which Bader specially excepted. On December 5, 1983, the trial court sustained some of the twenty-four special exceptions and took the remainder under advisement. Ms. Bader filed a Second Amended Petition on January 18, 1984. In April 1984, the trial court sustained the remaining special exceptions, extended its order originally sustaining the special exceptions to the Second Amended Petition, and granted Bader's and Cox's motions for summary judgment on all six of Ms. Bader's causes of action. Ms. Bader argues that the trial court erred by sustaining Bader's special exceptions. We agree.

▪ We note, preliminarily, that Ms. Bader did not waive her claim that the special exceptions were erroneously sustained by refusing to amend her Second Amended Petition to comply with the court's order. If special exceptions are sustained, the pleader may amend to meet the exception or decline to amend and test on appeal the validity of the trial court's rulings. *Davis v. Quality Pest Control*, 641 S.W.2d 324, 328 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.); *Hubler v. City of Corpus Christi*, 564 S.W.2d 816, 820 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.); *Rodriquez v. Yenawine*, 556 S.W.2d 410, 413 (Tex.Civ.App.—Austin 1977, no writ).

▪ Although broad discretion is vested in the trial court in hearing, construing, and sustaining special exceptions, *Rodriguez*, 556 S.W.2d at 413, the pleading attacked must be liberally construed to do substantial justice, and the trial court must accept as true all material factual propositions alleged and all factual statements which by fair implication reasonably can be inferred from the allegations. *Roark v. Allen*, 633 S.W.2d 804, 809–810 (Tex.1982); *Wheeler v. White*, 398 S.W.2d 93, 95 (Tex. 1965); *Fazekas v. University of Houston*, 565 S.W.2d 299, 302 (Tex.Civ.App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.) *appeal dismissed*, 440 U.S. 952, 99 S.Ct. 1487, 59 L.Ed.2d 765 (1979). The court's rulings

will not be disturbed on appeal absent a showing of abuse of discretion. *Farrar v. Farrar*, 620 S.W.2d 801, 801 (Tex.Civ.App. —Houston [14th Dist.] 1981, no writ); *Hubler*, 564 S.W.2d at 820; *Rodriguez*, 556 S.W.2d at 413.

▪ TEX.R.CIV.P. 45 establishes the general standard of specificity in Texas pleadings:

> Pleadings in the district and county courts shall consist of a statement in plain and concise language of the plaintiff's cause of action or the defendant's grounds of defense. That an allegation be evidentiary or be of legal conclusion shall not be ground for objection when fair notice to the opponent is given by the allegations as a whole.

TEX.R.CIV.P. 47 specifies that "[a]n original pleading which sets forth a claim for relief ... shall contain (a) a short statement of the cause of action sufficient to give fair notice of the claim involved...." The "fair notice" requirement is fulfilled if the pleading is sufficiently specific that an opposing attorney of reasonable competence can ascertain the nature of the basic issues in controversy and the relevant testimony. *Roark*, 633 S.W.2d at 810; *Castleberry v. Goolsby Building Corp.*, 617 S.W.2d 665, 666 (Tex.1981); *Stone v. Lawyers Title Insurance Corp.*, 554 S.W.2d 183, 186 (Tex.1977); *McCane Sondock Detective Agency v. Penland Distributors, Inc.*, 523 S.W.2d 62, 65 (Tex.Civ.App.—Houston [14th Dist.], no writ). The party excepting to a pleading has the burden of demonstrating that fair notice has not been given. *Rodriguez*, 556 S.W.2d at 414.

▪ The majority of Bader's exceptions to which Ms. Bader did not respond constituted an attempt to challenge Ms. Bader's pleading by stating extrinsic facts. The function of a pleading is to define the issues at trial, not to state evidence. *Murray v. O & A Express, Inc.*, 630 S.W.2d 633, 636 (Tex.1982). The rules do not require that a plaintiff plead her entire case with exactness. The appropriate mechanisms for challenging allegations in a pleading by stating extrinsic facts are a

plea in bar, a plea in abatement, or a motion for summary judgment. *City of Corpus Christi v. Sudduth,* 475 S.W.2d 720, 721 (Tex.1972); *Ragsdale v. Ragsdale,* 520 S.W.2d 839, 843 (Tex.Civ.App.—Fort Worth 1975, no writ).

 Other special exceptions were directed to allegations in the petition that, we hold, gave Bader and Cox sufficient notice of Ms. Bader's claims. Accordingly, we hold that the trial court abused its discretion by sustaining the special exceptions.

Accordingly, we reverse the summary judgment and remand for proceedings consistent with this opinion.

WHITHAM, J., concurs.

MALONEY, J., dissents without written opinion.

WHITHAM, Justice, concurring.

I concur in the result. As pointed out by the majority, Ms. Bader alleged that the law firm operated as a partnership but did not present summary judgment proof of the terms of any partnership agreement. Consequently, the Texas Uniform Partnership Act, TEX.REV.CIV.STAT.ANN. art. 6132b (Vernon 1970 & Vernon Supp.1985), governs the rights and duties of the partners. *Park Cities Corp. v. Byrd,* 534 S.W.2d 668, 672 (Tex.1976); *Dobson v. Dobson,* 594 S.W.2d 177, 180 (Tex.Civ.App.— Houston [1st Dist.] 1980, writ ref'd n.r.e.). Therefore, we must apply the act to the state of the summary judgment proof in the record.

Ms. Bader, as a partner's spouse, had no community property right in the contingent fee contract employment cases or files of Bader and Cox, a partnership. A partner's rights in specific partnership property are not community property. Article 6132b, section 28–A(1). Ms. Bader, however, as a partner's spouse, had a community property interest in her husband's interest in the partnership. A partner's interest in the partnership may be community property. Article 6132b, section 28–A(2). Moreover, upon the death of her husband, Ms. Bader became the assignee or purchaser of her husband's interest in the partnership. On the death of a partner, such partner's surviving spouse shall to the extent of her interest in the partnership be regarded as assignee and purchaser of such interest from the deceased partner. Article 6132b, section 28–B(1)(B).

Dissolution of the partnership occurred under the facts of the present case upon the death of Bertran T. Bader. The dissolution of a partnership is the change in the relationship of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business. Article 6132b, section 29. When any partner dies and the business is continued under circumstances here applicable the legal representative, as against the partnership, may have the value of the decedent's interest in the partnership at the date of dissolution ascertained and shall receive as an ordinary creditor an amount equal to the value of dedecent's interest in the dissolved partnership with interest. Article 6132b, section 42. The legal representative, however, in lieu of interest on decedent's interest in the partnership from the date of dissolution, may, at his option, have the profits attributable to the use of his right in the property of the dissolved partnership from that date. Article 6132b, section 42. Consequently, upon Bertran T. Bader's death, Ms. Bader, under the facts of the present case, was entitled to have the value of her husband's interest in the partnership determined as of the date of his death and to receive that value, plus either interest on that value from that date or the profits attributable to the use of decedent's interest from that date. Article 6132b, section 42.

Therefore, we must determine Bertran T. Bader's interest in the partnership at the date of his death. A partner's interest in the partnership is his share of the profits and surplus. Article 6132b, section 26. Thus, we must determine Bertran T. Bader's share of the profits and surplus at the date of his death on April 7, 1982. The act does not define "profits and surplus." Neither does the act define "profits" or "sur-

plus." Consequently, we must determine what are "profits and surplus" within the meaning of the act.

The only summary judgment proof directed at our inquiry is the undisputed affidavit of a certified public accountant. The affidavit proved that the partnership's fiscal year was the calendar year and proved the amount of profits for the period January 1, 1982, through April 7, 1982. Therefore, the amount of profit for the period in question can be ascertained by the undisputed summary judgment proof. "Surplus," however, presents a summary judgment problem. The word "surplus" is well adjudicated, and means the excess of assets over liabilities. *Anderson v. United States*, 131 F.Supp. 501, 502 (S.D.Cal.1954) (applying the Uniform Partnership Act adopted in California). With respect to "surplus," the accountant's affidavit states:

> It is commonly understood in the accounting profession in Texas that the term "surplus" contained in the Texas Uniform Partnership Act is synonymous with the accepted partnership accounting term "capital account balance". Beginning on January 1, 1982, Bertran T. Bader, Jr.'s capital account balance, including all previous contributions and profits reduced by prior draws, was $409.17. By adding the current period profits (January 1—April 7) and reducing that sum by the draws distributed to Mr. Bader during the period, Bertran T. Bader, Jr.'s capital account on April 7, 1982 was $4,080.88.

The accountant, however, does not tell us that his concept of the term "capital account balance" means the excess of assets over liabilities on April 7, 1982. To my mind, the accountant's affidavit does not tell us what we need to know—the amount of money, if any, which equals the excess of assets over liabilities.

Thus, the summary judgment proof fails to establish the amount of surplus. Consequently, a material issue of fact remains as to the amount of the share of Bertran T. Bader's interest in the partnership at the date of his death. Therefore, I concur that we must reverse and remand. In light of the limited basis upon which I ground this opinion, I express no opinion on other matters addressed by the majority except as follows.

The controversy in the present case centers on the contingent fee contract employment cases or files of Bader and Cox, a partnership. The majority holds "that pending contingent fee cases are partnership property which may or may not have value, depending upon the evidence." I agree. To my mind, the contingent fee contract employment cases or files are assets of the partnership. In my view, certain of these assets may have been of no value while others may have been of little value or of great value on April 7, 1982. Thus, the value of each contingent fee case will have to be determined as of April 7, 1982. Therefore, the value of these assets on April 7, 1982, is for the fact finder to determine.